STATE of Wisconsin, Plaintiff-Respondent,

v.

Earnest ALEXANDER, Defendant-Appellant.

Court of Appeals

*No. 2005AP466–CR. Submitted on briefs September 6, 2005. —Decided September 20, 2005.*

2005 WI App 231

(Also reported in 706 N.W.2d 191.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Katherine Lloyd Tripp*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Earnest Alexander appeals a judgment of conviction for possession of cocaine with intent to deliver and an order denying his motion to suppress evidence. Alexander argues police lacked reasonable suspicion to detain him, so evidence obtained from the subsequent frisk should have been suppressed. We agree and reverse the judgment and order, remanding the cause to allow Alexander to withdraw his plea.

### Background

¶ 2. At 11:30 p.m. on March 20, 2004, a man was shot on Milwaukee's north side. Officer Curt Charles was first at the scene and took a description of the assailant. The victim said the shooter was a black male wearing a thigh-length coat with fur around the hood

and carrying an unknown gun type. Later, at the hospital, the victim provided further details, adding that the coat was black and that the shooter was also wearing a black stocking cap and dark pants.

¶ 3. A description of the perpetrator was added to the police department's "major crime summary." Officer Chad Boynack received the summary at midnight roll call on March 22, more than a day after the shooting. The summary described the shooting suspect as a black male wearing a black skull cap, black jacket, and dark pants.

¶ 4. On patrol around 1:30 a.m., Boynack noticed Alexander walking ten blocks east of the crime scene, wearing a black skull cap, black waist-length jacket, and black pants. When approached, Alexander allegedly "stutter-stopped," paused one or two seconds, and avoided eye contact, but continued walking and neither fled nor changed direction. Based on Alexander's perceived hesitation, aversion to eye contact, and similarity to the description in the crime summary, Boynack stopped Alexander.

¶ 5. When frisking Alexander for weapons, Boynack discovered forty-nine corner cuts of cocaine. Alexander was arrested and charged with possession of cocaine with intent to deliver, but was never questioned about the shooting.

¶ 6. Alexander filed a motion to suppress evidence from the frisk, arguing Boynack lacked reasonable suspicion to stop him. The court stated it was a close case but denied the motion, finding the stop justified because: Alexander matched the description in the crime summary, he was directly east of the shooting, the shooting was a significant crime that warranted intense investigation, and the twenty-six elapsed hours meant that the stop was not so remote from the crime as to be

pretextual. The court also ruled that, given the hour, it was not unreasonable for Boynack to do a weapons frisk.

¶ 7. After the motion was denied, Alexander pled guilty to possession with the intent to deliver one to five grams of cocaine. He was sentenced to five years' imprisonment consisting of fourteen months' initial confinement and forty-six months' extended supervision. Alexander appeals.[1]

## Discussion

■■■■

¶ 8. When we review the trial court's ruling on a motion to suppress, we uphold factual findings unless clearly erroneous. *State v. Eskridge*, 2002 WI App 158, ¶ 9, 256 Wis. 2d 314, 647 N.W.2d 434. We decide independently whether the facts establish that a particular search or seizure occurred and, if so, whether it violated constitutional standards. *See State v. Richardson*, 156 Wis. 2d 128, 137–38, 456 N.W.2d 830 (1990). Alexander concedes, though, that if the stop was valid, the search was valid. A valid investigatory stop requires reasonable suspicion. Reasonable suspicion requires the officer have "a particularized and objective basis" for suspecting the person stopped has been engaged in criminal activity. *State v. Washington*, 2005 WI App 123, ¶ 16, 700 N.W.2d 305 (citations omitted). "[R]easonable suspicion cannot be based merely on an inchoate and unparticularized suspicion or hunch." *Id.* (internal quotations omitted).

---

[1] "An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty." Wis. Stat. § 971.31(10) (2003–04).

■

¶ 9. Our supreme court has recognized that this traditional standard "at times provides little guidance for courts and law enforcement officials in determining the quantum and nature of information necessary to establish the reasonableness of the stop." *State v. Guzy*, 139 Wis. 2d 663, 676, 407 N.W.2d 548 (1987). As such, the court approved of six factors enumerated by Professor Wayne R. LaFave that "must be considered in reaching the required determination" of reasonableness:

> (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.

*Id.* at 677 (citations omitted). We will skip the first factor for the moment, because Alexander has an additional argument related to it. As a whole, however, we conclude Boynack lacked reasonable suspicion to stop Alexander.

¶ 10. Given that twenty-six hours had passed, the "size of the area in which the offender might be found" was essentially infinite. As Alexander points out, twenty-six hours provided sufficient time for the offender to flee the immediate area, if not the city, state, or even country. Thus, the number of people about in "the area" was also essentially infinite. Even on a slightly smaller scale, if the offender remained in Mil-

waukee, given the city's population, the chance that the shooter would be randomly encountered is negligible.

¶ 11. Additionally, Alexander was found ten blocks east of the shooting location, but the victim reported that the shooter fled to the south. Alexander was doing nothing particularly suspicious when he was stopped—certainly nothing suspicious before Boynack approached him and Alexander averted his gaze. And because there is no indication Boynack knew Alexander by sight, Boynack did not have any suspicion that Alexander might have "been involved in other criminality of the type presently under investigation."

¶ 12. Finally, returning to the first factor, "the particularity of the description of the offender," we agree with Alexander that the description in the crime summary was too vague. Indeed, there was no mention of age, height, build, complexion, facial hair, or other distinguishing characteristics. Rather, the description was of a black male in dark clothes which, as the trial court acknowledged, was likely to encompass much of the area's population.

¶ 13. But Alexander also advocates, relative to this first factor, application of the "collective knowledge" doctrine. "Under the collective knowledge doctrine, there are situations in which the information in the hands of an entire police department may be imputed to officers on the scene to help establish reasonable suspicion or probable cause." *State v. Orta*, 2000 WI 4, ¶ 20, 231 Wis. 2d 782, 604 N.W.2d 543 (Prosser, J., concurring) (citations omitted).

¶ 14. Alexander contends the doctrine can also impute to officers knowledge that would negate probable cause. Thus, the information given to officer

651

Charles—that the jacket was thigh-length with a furry hood—and to officers at the hospital—that the suspect was really wearing a stocking, not a skull, cap—should be imputed to Boynack. Armed with that information, Alexander contends, Boynack would have no reasonable suspicion to stop a man wearing a waist-length coat with no hood, no fur, and no stocking cap.

¶ 15.  The State has neglected to respond to this argument. Arguments not refuted are deemed admitted. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). Thus, for purposes of this case only, we deem Alexander's argument persuasive: the collective knowledge doctrine may also be used to negate reasonable suspicion justifying an investigatory stop.

¶ 16.  Applying the collective knowledge doctrine, coupled with the LaFave factors our supreme court acknowledged, we conclude Boynack lacked reasonable suspicion to stop Alexander. Evidence from the frisk should have been suppressed. Accordingly, we reverse the judgment and order and remand this case to allow Alexander to withdraw his plea.

*By the Court.*—Judgment and order reversed and cause remanded with directions.