# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 19, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.  2022AP56**
**2022AP57**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2019TP233
2019TP235

**IN COURT OF APPEALS**
**DISTRICT I**

---

IN THE INTEREST OF R.L.C., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

L.T.H.,

RESPONDENT-APPELLANT.

---

IN THE INTEREST OF J.W., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

L.T.H.,

RESPONDENT-APPELLANT.

---

APPEALS from orders of the circuit court for Milwaukee County: MARSHALL B. MURRAY, Judge. *Affirmed.*

¶1    BRASH, C.J.[1] L.T.H. appeals the order of the trial court terminating her parental rights to R.L.C. and J.W. L.T.H. argues that the court erroneously exercised its discretion in determining that it was in the best interests of the children to terminate her parental rights because the court failed to consider the statutory factor relating to the wishes of the children. L.T.H. further argues that the trial court erred in allowing the admission of evidence relating to her experience with the child welfare system when she was a child.

¶2    Additionally, L.T.H. asserts that her due process rights were violated by the trial court in its determination that her motion to sever her trial for the grounds phase of the proceedings from that of the father of one of her children was moot after that father was defaulted for failing to appear. L.T.H. argues that it was also a due process violation when the court refused to allow her to testify at the dispositional hearing after she had previously opted not to testify.

¶3    Upon review, we reject L.T.H.'s arguments and affirm.

## BACKGROUND

¶4    L.T.H. is the biological mother of R.L.C., born in October 2010, and J.W., born in December 2013. The children have another sibling, L.D.H., born in

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20).

January 2012, who was also involved in these proceedings.  The children all have different adjudicated fathers.

¶5      In May 2013, the Division of Milwaukee Child Protective Services[2] (DMCPS) received a referral that L.T.H. had left her children—at that time, R.L.C. and L.D.H.—home alone.  Additionally, around the same time, an officer from the Milwaukee County Sheriff's Department went to L.T.H.'s home to serve a warrant on her from the Wauwatosa Police Department, and found the children home alone with the door partially open.

¶6      L.T.H. was arrested on the warrant as well as for child neglect.  L.T.H. was pregnant with J.W. at the time, and was taken to the hospital for medical attention related to her pregnancy before being taken to jail.  There was no relative available to come to the scene to care for the children, so they were detained and placed in foster care.  Petitions for children in need of protection or services (CHIPS) for R.L.C. and L.D.H. were filed.

¶7      The CHIPS petitions noted that there was another referral to DMCPS regarding the children in February 2013.  Those allegations included that LT.H. beat the children with "belts, shoes or whatever she can grab[.]"  It was also alleged that there were no beds in the room where the children slept, that they had no food because L.T.H. sold her food share benefits, and that the children had skin rashes that had not been treated.  Furthermore, there were reports that L.T.H. had left the children home alone on "multiple occasions."

---

[2] When these CHIPS petitions were filed, the Division of Milwaukee Child Protective Services was known as the Bureau of Milwaukee Child Welfare.

¶8 Additionally, the petitions explained that the arrest warrant for L.T.H. was for disorderly conduct relating to a physical altercation at the children's daycare center. The warrant included a temporary restraining order from the daycare provider.

¶9 Dispositional orders for the CHIPS petitions were entered in October 2013, and listed a number of conditions that had to be met before the children could be returned to L.T.H. Those conditions included that she participate in anger management services and parenting classes, and resolve all pending criminal cases against her. Regular visitation with the children was also required. These orders were in effect when J.W. was born in December 2013.

¶10 A trial reunification of R.L.C. and L.D.H. with L.T.H. was attempted in March 2014, with the CHIPS orders still in effect. Those orders were subsequently extended until April 2016. However, in October 2015, it was reported that L.T.H. had been arrested and was being held in the Waukesha County Jail, and thus was not able to pick up the children from daycare. R.L.C. and L.D.H. were detained by DMCPS under their CHIPS orders, and a CHIPS petition was filed with regard to J.W.

¶11 L.T.H. was incarcerated for several months. It was further noted in the CHIPS petition for J.W. that he had a seizure condition that was discovered shortly after his birth, and that L.T.H. had not followed through with keeping additional appointments and refilling medications for his condition. A dispositional order relating to the CHIPS petition for J.W. was entered in April 2016, containing similar conditions to the order for R.L.C. and L.D.H., as well as conditions for demonstrating the ability to meet J.W.'s medical and special

education needs. Additionally, the CHIPS orders for R.L.C. and L.D.H. were again extended.

¶12 Another trial reunification was attempted in December 2016. However, in July 2017, the children were again detained by DMCPS after reports of several police contacts with L.T.H. and her then-significant other for physical and verbal abuse.

¶13 Petitions for the Termination of Parental Rights (TPR) with regard to the children were filed in November 2019. In the petitions, the State's alleged grounds for termination included the continuing need of protection or services for the children, pursuant to WIS. STAT. § 48.415(2), and the failure to assume parental responsibility, pursuant to § 48.415(6). The petitions noted that L.T.H. "has demonstrated a pattern of physical violence towards others, dishonesty with the agency and service providers, and manipulation of the overall case plans for the children" as well as "patterns of leaving her children unsupervised, using inappropriate discipline, not providing for her children, [and] exposing her children to violence[.]"

¶14 The matter was set to proceed to a jury trial. L.T.H. filed a motion to sever from R.L.C.'s father in April 2020 due to their history of domestic violence, because L.T.H. believed he might use "alleged acts of domestic violence as a defensive tactic" in these proceedings. However, at the pretrial hearing following that submission, R.L.C.'s father was defaulted by the trial court based on his failure to appear in court, cooperate with discovery, keep in contact with his attorney, keep in contact with the family's case manager, and engage in any services provided by DMCPS. The trial court opined that this finding rendered L.T.H.'s motion for severance moot, and her trial counsel agreed.

5

¶15 L.T.H. subsequently entered a no contest plea to the ground of failure to assume parental responsibility in April 2021, and the matter proceeded to disposition. A dispositional hearing was held over several days in November 2021. The trial court heard testimony from the case worker for the family, the foster parent for R.L.C. and J.W., L.T.H.'s mother, and a psychologist who had conducted an evaluation of L.T.H. The psychologist noted that L.T.H. had discussed her background and childhood during that evaluation, and had disclosed that she had been involved in foster care as a child after witnessing domestic violence in her home.

¶16 L.T.H. was given the opportunity to testify at the second hearing date. L.T.H.'s trial counsel informed the trial court that L.T.H. was opting not to provide direct testimony. Furthermore, counsel agreed that any testimony by L.T.H. during the following hearing date would be limited to rebuttal testimony after the case worker testified. In fact, L.T.H. rested at the close of the proceedings that day, subject to rebuttal testimony of the case worker.

¶17 However, at the next hearing date, L.T.H.'s counsel informed the trial court that she in fact did want to testify, even though at the previous hearing she had declined to do so. The court observed that they had discussed the issue during the previous hearing date, and upon L.T.H.'s decision not to testify they had set the time frame for the current hearing accordingly. The court stated that there was not sufficient time allotted during the current hearing date for her testimony. Trial counsel objected to that decision.

¶18 At the close of the disposition hearing, the trial court discussed the statutory factors for determining the best interests of the children, and ultimately terminated L.T.H.'s parental rights as to R.L.C. and J.W. Regarding L.D.H.,

6

however, the court dismissed the TPR petition, noting the lack of an adoptive resource for her, and "strongly recommend[ed]" that DMCPS look into transitioning L.D.H. into placement with L.T.H.'s mother, given their relationship. This appeal follows.

## DISCUSSION

¶19    On appeal, L.T.H. first argues that the trial court erroneously exercised its discretion in determining that the termination of her parental rights was in the best interests of R.L.C. and J.W.  "The ultimate determination of whether to terminate parental rights is discretionary with the [trial] court." *State v. Margaret H.*, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475.  We will uphold this decision if the trial court applied the correct standard of law to the facts of the case.  *See id.*, ¶32.

¶20    In making the determination to terminate parental rights, "the best interests of the child is the paramount consideration" for the trial court.  *Id.*, ¶33. The trial court's decision should reference the factors set forth in WIS. STAT. § 48.426(3), and any other factors it relied upon, in explaining on the record the basis for the disposition.  *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402.

¶21    The statutory factors that the trial court is required to consider are:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

7

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

¶22 Specifically, L.T.H. asserts that the trial court failed to consider the fourth factor—the wishes of the children—in making its determination. However, the record indicates that the trial court noted, particularly for R.L.C., that "it [was] not known" what the wishes regarding adoption were. This comment was based on the evidence; that is, the case worker's testimony that adoption was not discussed with R.L.C. because, due to his cognitive delays, his therapist did not believe that he "would be able to understand the concept or be able to emotionally handle processing that." Likewise, the case worker also testified that J.W.'s therapist felt that he was not "emotionally mature enough" to process the concept of adoption. In other words, the court considered this factor, but recognized that there was no specific information relating to it.

¶23 Furthermore, the trial court heard other testimony from the case worker as well as from the boys' foster parent regarding the progress they have made with their behavioral issues since being placed with her, that they are very happy there, and that the foster parent is an adoptive resource for them. Given this evidence reflected in the record, it appears that the trial court simply gave the factor relating to the wishes of the children less weight than other factors. *See Julie A.B.*, 255 Wis. 2d 170, ¶30. Therefore, we conclude that the court applied the correct standard of law in making its determination regarding the best interests

8

of R.L.C. and J.W., and thus there was no error by the court in this regard. *See Margaret H.*, 234 Wis. 2d 606, ¶32.

¶24 L.T.H. next argues that the trial court erroneously admitted evidence relating to her experience in foster care as a child, which was included in the testimony of her therapist. However, L.T.H. did not object to this testimony during the hearing. Issues not raised at the trial court level generally will not be considered on appeal, because the trial court was not afforded the opportunity to resolve the issue. *State v. Huebner*, 2000 WI 59, ¶¶10, 12, 235 Wis. 2d 486, 611 N.W.2d 727.

¶25 Furthermore, any party involved in a TPR proceeding "may present evidence relevant to the issue of disposition," and the trial court "shall admit all testimony having reasonable probative value, but shall exclude immaterial, irrelevant, or unduly repetitious testimony[.]" WIS. STAT. §§ 48.427(1), 48.299(4)(b). This evidence regarding L.T.H.'s history—as well as her mother's history—with the foster care system was relevant to disposition in this case, given the trial court's ultimate determination regarding L.D.H., which included a recommendation to seek placement with L.T.H.'s mother. Therefore, the court did not err in allowing this testimony. *See Margaret H.*, 234 Wis. 2d 606, ¶32.

¶26 L.T.H.'s next argument is that the trial court erred in denying her motion to sever the grounds phase trial from R.L.C.'s father because the issue had become moot. This argument also was not raised at the trial court level through an objection. In fact, trial counsel agreed with the court that the issue was moot because R.L.C.'s father was defaulted from the proceedings. Thus, this claim was also forfeited. *See Huebner*, 235 Wis. 2d 486, ¶11 & n.2.

¶27     Moreover, there was no trial for the grounds phase, because L.T.H. entered a plea. Although L.T.H. asserts on appeal that she nevertheless suffered substantial prejudice from the limited evidence presented regarding her relationship with R.L.C.'s father and his criminal history, which served as the foundation for the grounds against him, she does not develop this argument to sufficiently demonstrate this alleged prejudice. Thus, we do not discuss this argument further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (this court "may decline" to address arguments that are not developed and are "supported by only general statements").

¶28     Finally, we consider L.T.H.'s argument regarding her due process right to testify at the dispositional hearing. That hearing was held over three days, November 1st, 2nd, and 24th of 2021. As noted above, L.T.H. was given the opportunity to testify on the second day of the hearing, November 2nd. The record indicates that on that day, the testimony of the case worker had to be postponed to November 24th because she was ill and encountered technical difficulties when she attempted to testify via video. During a discussion regarding the schedule for November 24th, the trial court proposed that L.T.H. provide her direct testimony on November 2nd, if she was opting to testify; otherwise, if L.T.H. chose not to testify, she would still be given the opportunity to provide rebuttal testimony on November 24th, to respond to the case worker's testimony.

¶29     The record reflects that L.T.H.'s trial counsel discussed these options with her. Counsel indicated that he did not "have any primary testimony to give today," and that L.T.H. was "agreeable" to retaining the option to provide rebuttal testimony at the following hearing date. The trial court was clear that her testimony would "only be as rebuttal" testimony relating to any facts elicited from the case worker's testimony, and that she would be "limited as to what she can

10

answer to" at the November 24th hearing date. Counsel replied that this would be "fine." L.T.H. proceeded to rest her case at the end of the proceedings on November 2nd, subject to the possible rebuttal testimony.

¶30 However, on November 24th, L.T.H.'s counsel informed the trial court that she had decided that she did want to testify. The court, referencing the limited time that had been set for that hearing date, rejected her request. The court observed that L.T.H. had previously "made her decision not to testify and we had a discussion about that." Trial counsel objected to that decision.

¶31 Based on this information in the record, we conclude that L.T.H. waived her right to testify on November 2nd. *See State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 ("'waiver is the intentional relinquishment or abandonment of a known right'" (citation omitted)). The record clearly shows that L.T.H.'s trial counsel discussed this issue with her and that she agreed to waive her right to testify, subject to the opportunity to provide rebuttal testimony at the next hearing after the case manager's testimony was complete. That exchange with counsel and the trial court, along with the fact that L.T.H. rested her case at the end of that day, are all indications that she intentionally relinquished her right to provide direct testimony. *See id.*

¶32 Furthermore, L.T.H.'s argument did not provide any details as to what her testimony would have been and how it would have related to the best interest factors considered by the trial court; rather, she merely makes a conclusory statement that her testimony would have "address[ed] … many of the claims made by witnesses of the State." Again, we generally do not consider arguments that are not developed. *See Pettit*, 171 Wis. 2d at 646.

¶33    Moreover, the guardian ad litem advanced the argument that L.T.H. had waived her right to testify on November 2nd, and the State suggested this was a waiver as well.  L.T.H. did not respond to these arguments, as she opted not to file a reply brief.  "Arguments not refuted are deemed admitted."  ***State v. Alexander***, 2005 WI App 231, ¶15, 287 Wis. 2d 645, 706 N.W.2d 191.

¶34    In sum, we conclude that all of L.T.H.'s claims fail and that there was no error on the part of the trial court.  We therefore affirm the court's order terminating L.T.H.'s parental rights to R.L.C. and J.W.

*By the Court.*—Orders affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.