## COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP543-CR**

Cir. Ct. No. **2015CF339**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

NICHOLAS J. NERO,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dunn County: ROD W. SMELTZER and CHRISTINA M. MAYER, Judges. *Affirmed*.

¶1 STARK, P.J.[1] Nicholas J. Nero appeals from his judgment of conviction, entered upon a jury's verdict, for criminal damage to property, as a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

repeater; operating a motor vehicle with a restricted controlled substance in his blood, as a third offense; and operating a motor vehicle after revocation (OAR). Nero also appeals from an order denying his postconviction motion.[2] Nero was arrested and charged with multiple crimes after he drove his vehicle onto and around Monarch Paving Plant's property, causing damage, and his vehicle eventually became stuck in a bean field. On appeal, Nero argues that the circuit court erred by denying his motion for reconsideration of the court's previous order denying his suppression motion and by denying his motion for a new trial on the ground that his trial counsel provided constitutionally ineffective assistance. We reject each of Nero's arguments and affirm.

## BACKGROUND

¶2       The following information is based on the testimony presented at the motion hearings and at trial. On the evening of October 13, 2015, after dropping off his friends in Menomonie, Wisconsin, Nero alleged that he planned to sleep in his vehicle in a Walmart parking lot. Instead, he stated that he got lost and ended up on Monarch's property, where, according to Monarch's foreman, who lives in a trailer on the property, Nero drove "back and forth and didn't really know which way to turn or where to go"; drove "straight across [Monarch's] lawn"; drove up to and around a berm in between two retaining ponds; drove over a PVC pipe that was between the two ponds, breaking the pipe; and drove over the top of a concrete barrier, damaging the bricks, all before leaving Monarch's property.

---

[2] The Honorable Rod W. Smeltzer presided over Nero's trial and entered Nero's original judgment of conviction. The Honorable Christina M. Mayer entered Nero's judgment of conviction after resentencing and the order denying Nero's postconviction motion.

¶3    Nero's vehicle continued onto a road, and then he turned off the road directly into a bean field. Testimony revealed that there is "no field driveway or anything" that Nero turned onto; the "beans [grow] right up to the ditch." He drove for approximately half a mile, running over the tall stalks in the bean field until his vehicle became stuck. At that point, Nero abandoned his vehicle and called his friends to pick him up. According to Nero, he did not contact the police at that time because he did not have a valid driver's license. Nero stated that he decided to go with his friends at that time, assuming he would come back later for his car, and they went to smoke methamphetamine.

¶4    Hours later, Nero's friends dropped him off near Monarch, and Nero began searching for his car. Nero testified that he walked around for an hour. At approximately 3:30 a.m., he came to the foreman's trailer. Nero knocked on the door, and the foreman answered. According to the foreman, "[i]t was very cold out," Nero was in a t-shirt, he had no shoes or socks on, and he was "totally wet." Nero told the foreman: "I'm lost, I'm scared, and I'm hungry." The foreman testified that he asked Nero, "[D]o you know where you are?" Nero responded, "I'm in Green Bay," and the foreman corrected him, stating, "[N]o, you're in Menomonie at an asphalt plant." The foreman believed that Nero was "definitely" "under the influence of something," and the foreman decided to call the police.

¶5    Deputy Michael Spenle, with the Dunn County Sheriff's Office, arrived at Monarch at around 4:00 a.m. Spenle observed that Nero was "disorientated" and "confused," and Nero told Spenle that he was both coming from Hudson, Wisconsin, and going to Hudson in the same statement. Although Spenle did not perform any field sobriety tests at this time, he testified that there were "[v]isual signs of [Nero] being under the influence."

¶6      Spenle, Nero, and the foreman drove around for an hour looking for Nero's vehicle, which they never found.[3]  During the time they were looking for Nero's vehicle, Spenle noted tire tracks on the "grassy front entrance area of Monarch" and observed other damage to the property, including damage to the PVC pipe.  At some point, Spenle discovered that Nero's operating privileges had been revoked for an operating a motor vehicle while intoxicated (OWI) offense.  Spenle then arrested Nero for OAR and criminal damage to property.   When Spenle's shift ended, Sergeant Todd Kurtzhals, also with the Dunn County Sheriff's Department, was assigned to follow up with the investigation.

¶7      While in the Dunn County Jail, Nero met with a local probation agent because Nero was on probation in another county.  Nero provided a statement regarding the incident.  The local probation agent also informed Nero that his assigned probation agent wanted him to take a urinalysis, to which he eventually consented.  That test was positive for three controlled substances.

¶8      After learning of Nero's positive urinalysis results and the status of the investigation to that point, Kurtzhals determined that probable cause existed to request a blood test from Nero.  Kurtzhals then went to the jail, where he spoke to Nero.  During their conversation, Nero admitted that he had hypodermic needles in his vehicle, even though he is not a diabetic, and that he had used methamphetamine approximately five days earlier.  Kurtzhals testified that he did not provide ***Miranda***[4] warnings to Nero before or during their conversation.

---

[3] Another Dunn County Sheriff's Deputy—Jon Vernon—eventually located the vehicle, and it was removed from the bean field and impounded.

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Kurtzhals did, however, read Nero the Informing the Accused form[5] and requested that Nero consent to provide a blood sample. Nero consented. The blood test confirmed the presence of methamphetamine in Nero's system.

¶9 Thereafter, Kurtzhals applied for, and received, a search warrant for Nero's vehicle. The affidavit supporting the search warrant included Nero's non-***Mirandized*** statements to Kurtzhals as well as Nero's statements to the local probation agent. The search of Nero's vehicle uncovered two syringes, three empty gem packs,[6] an "empty gem pack with cocaine residue," and cotton swabs.

¶10 The State charged Nero by Information with one count each of possession of cocaine, as a second and subsequent offense; criminal damage to property, as a repeater; operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood, as a third offense; third-offense OWI; OAR; and possession of drug paraphernalia, as a repeater. Nero filed a motion to suppress all evidence "obtained unconstitutionally," including the results of the search, Nero's statements, and the results of the urinalysis and blood test.

¶11 The circuit court held two hearings on the suppression motion and, thereafter, granted in part and denied in part Nero's motion by oral ruling. The court suppressed the statements Nero made to the probation agent and to Kurtzhals

---

[5] "[T]he Informing the Accused form is a script, required to be read by [WIS. STAT. § 343.305(4)], that provides information about the legal consequences of consenting to chemical testing and the legal consequences of refusing." ***State v. Heimbruch***, 2020 WI App 68, ¶1 n.1, 394 Wis. 2d 503, 950 N.W.2d 916. The purpose of this form is to "advise the accused about the nature of the driver's implied consent" under Wisconsin's implied consent law. ***State v. Piddington***, 2001 WI 24, ¶17, 241 Wis. 2d 754, 623 N.W.2d 528.

[6] Kurtzhals testified that a "gem pack" "looks like a small ziplock baggy," but the one he found in Nero's vehicle "was blue in color but still transparent."

without *Miranda* warnings. Additionally, the court suppressed the physical evidence obtained from Nero's vehicle because the search warrant was based on these suppressed statements.

¶12 Finally, the circuit court concluded that the results of Nero's blood test would not be suppressed. According to the court, Kurtzhals could consider the urinalysis results as well as Spenle's observations and the evidence concerning how Nero operated his vehicle on Monarch's property and in the bean field, all of which provided probable cause to ask Nero to submit to a blood test.

¶13 After the suppression hearing, the State amended the criminal complaint to charge three counts: (1) criminal damage to property, as a repeater; (2) operating a motor vehicle with a restricted controlled substance in the blood, as a third offense; and (3) OAR.[7] The case then proceeded to a jury trial.

¶14 At trial, the State called Monarch's foreman, Spenle, Vernon, the individual who collected Nero's blood, the blood analyst, and Kurtzhals to testify. Nero also testified in his own defense.

¶15 The jury returned guilty verdicts on all three counts. The circuit court immediately proceeded to sentencing, and Nero received a 2-year bifurcated sentence on the criminal damage to property charge, a 60-day jail sentence on the operating a motor vehicle with a restricted controlled substance charge, and a 6-month jail sentence on the OAR charge. On each charge, he was given credit for time served.

---

[7] We note that there does not appear to be an amended Information in the record.

¶16     Nero was then appointed new counsel, who filed a no-merit notice of appeal before this court (hereinafter, postconviction counsel).  We dismissed the appeal as premature because Nero was found guilty by a jury, the jury had been given instruction WIS JI—CRIMINAL 140, and we were waiting for a decision in *State v. Trammell*, 2019 WI 59, 387 Wis. 2d 156, 928 N.W.2d 564.  After *Trammell* was released, postconviction counsel filed a second no-merit notice of appeal, and we sua sponte raised the issue of whether the circuit court had properly conducted Nero's sentencing.  We ordered postconviction counsel to consult with Nero on that issue.  Thereafter, we rejected the no-merit report and dismissed the appeal.

¶17     On return to the circuit court, postconviction counsel filed a motion for resentencing on the grounds that the court did not articulate its sentencing goals or explain the reasons for the particular sentences imposed.  The court granted Nero's motion and resentenced Nero to the same sentences.

¶18     Nero was then appointed a second postconviction attorney (hereinafter, appellate counsel), who filed another postconviction motion: "Motion for Reconsideration and a New Trial pursuant to WIS. STAT. [RULE] 809.30."  The motion asked the circuit court to reconsider its decision regarding suppression of Nero's blood test results, and it also sought a new trial based on the alleged ineffective assistance of Nero's trial counsel.

¶19     The State argued that Nero's claims were barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), because he failed to raise these issues in his first postconviction motion for resentencing.  The circuit court determined that "[b]ased upon the appellate history, it would be unfair to hold Mr. Nero to the presumption under *Escalona-Naranjo* that this

post[]conviction motion is barred" because "[i]t is questionable whether Mr. Nero actually has had a direct appeal on this case." The court then denied Nero's motion for reconsideration of his motion to suppress evidence, concluding that Kurtzhals "had probable cause to justify the blood test either with or without the [urinalysis]." The court also denied Nero's motion for a new trial, determining that his "allegations of deficient performance [were] conclusory" and that he had failed to show that he suffered prejudice. Nero appeals.

## DISCUSSION

¶20 On appeal, Nero renews the arguments he presented in his second postconviction motion: his blood test results were the fruit of a compelled statement and should also have been suppressed and his trial counsel provided constitutionally ineffective assistance. For the reasons that follow, we reject all of Nero's arguments and affirm the circuit court's decision.

### I. *Escalona* bar

¶21 As an initial matter, the State also renews its argument that Nero's claims on appeal are barred by *Escalona-Naranjo*. As the State correctly explains, "*Escalona-Naranjo* held that WIS. STAT. § 974.06(4) bars defendants from bringing claims, including constitutional claims, under § 974.06 *if they could have raised them in a previous postconviction motion* or on direct appeal—unless they have a 'sufficient reason' for failing to do so." *See State v. Crockett*, 2001 WI App 235, ¶7, 248 Wis. 2d 120, 635 N.W.2d 673 (emphasis added) (citing *Escalona-Naranjo*, 185 Wis. 2d at 181, 184). The purpose of this procedural bar is to avoid successive motions on a defendant's claims that could have been brought in a single motion. *Escalona-Naranjo*, 185 Wis. 2d at 185-86.

8

¶22 Here, Nero's suppression and ineffective assistance of trial counsel claims could have been brought in his first postconviction motion, which sought only resentencing. Further, Nero fails entirely to present any reason, let alone a sufficient reason—such as, for example, ineffective assistance of his postconviction counsel—for his failure to present all of his claims in his first postconviction motion.[8] We recognize, however, that under the particular circumstances of this case, and as the circuit court noted, because Nero prevailed on his motion for resentencing, he has not had the opportunity for a direct appeal of his judgment of conviction after resentencing. Thus, in the interest of fairness and judicial efficiency, we will assume, without deciding, that Nero's current claims are not barred by *Escalona-Naranjo*.

## II. Motion to suppress

¶23 Nero asked the circuit court to reconsider its decision on his suppression motion and also suppress his blood test results. "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (citation omitted). "We review a question of constitutional fact under a two-step inquiry: First, we will uphold the circuit court's findings of fact unless those findings are clearly erroneous. Second, we conduct an independent, de novo analysis of the application of constitutional principles to the facts found." *State v. Blackman*, 2017 WI 77, ¶25, 377 Wis. 2d 339, 898 N.W.2d 774.

---

[8] In addition, when a defendant argues that he or she received ineffective assistance of postconviction/appellate counsel based on counsel's failure to argue a claim, he or she must also show that the claim(s) he or she contends should have been raised are clearly stronger than the issues that postconviction/appellate counsel chose to pursue. *State v. Romero-Georgana*, 2014 WI 83, ¶¶45-46, 360 Wis. 2d 522, 849 N.W.2d 668.

¶24 "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853. "A 'manifest error' is not demonstrated by the disappointment of the losing party"; instead, "[i]t is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.* (citations omitted).

¶25 According to Nero, the blood test results must be suppressed because Nero's compelled statements to the local probation agent served as an "investigatory lead" and the State failed to meet its burden to show an independent source to establish probable cause for the blood test. Specifically, Nero argues that "Kurtzhals relied on the [urinalysis] results to justify the blood test. And the [urinalysis] resulted from the compelled statement Mr. Nero provided to probation"; therefore, "the blood test is physical evidence derived from a compelled statement in violation" of his constitutional rights. *See State v. Quigley*, 2016 WI App 53, ¶46, 370 Wis. 2d 702, 883 N.W.2d 139 ("Once a witness, such as a probationer, is compelled to give an incriminating testimonial statement, that witness is entitled to a grant of immunity coextensive with the Fifth Amendment privilege against self-incrimination."); *Kastigar v. United States*, 406 U.S. 441, 446, 449 (1972).

¶26 Even if we assume, without deciding, that the urinalysis result was a fruit of Nero's compelled statement, we conclude that the State has met its burden to prove that Kurtzhals had sufficient independent evidence to request a blood test. *See State v. Spaeth*, 2012 WI 95, ¶74, 343 Wis. 2d 220, 819 N.W.2d 769 ("The State has the burden of proof, after a compelled incriminating testimonial statement is obtained by a probation agent, of demonstrating that evidence it

10

wishes to use in a criminal prosecution is 'derived from a legitimate source wholly independent of the compelled testimony.'" (quoting ***Kastigar***, 406 U.S. at 460)).

¶27    First, Kurtzhals was aware that Spenle had observed Nero being disoriented and confused at Monarch in the middle of the night and that Nero exhibited "[v]isual signs of … being under the influence."[9]    Second, Spenle reported that Nero had no idea where his car was located, and Spenle, Nero, and Monarch's foreman spent an hour looking for the vehicle without success.

¶28    Third, as the State explains, Kurtzhals had knowledge of Spenle's observations of Nero's "completely bizarre and inexplicable operation of [his] vehicle."  For example, based on the tire tracks left by the vehicle, it was clear to Spenle that Nero had been driving around Monarch among the large piles of rocks and dirt "for some time," Nero drove out of the parking lot onto "the grassy front entrance area," and Nero drove onto the berm in between two retaining ponds and over a PVC pipe, which broke the pipe.  Further, when Vernon eventually located Nero's vehicle in the bean field, it was clear that Nero had "just driv[en] right through [the] field."  It was also evident that Nero had driven a significant distance—approximately half a mile—into the field before his car became stuck.

---

[9]  Kurtzhals testified that he learned about law enforcement's investigation up to the point that the case was transferred to him from Marie Marty, a secretary for the sheriff's department, who was relaying the information in Spenle's and Vernon's reports. *Cf.* ***State v. Alexander***, 2005 WI App 231, ¶13, 287 Wis. 2d 645, 706 N.W.2d 191 ("Under the collective knowledge doctrine, there are situations in which the information in the hands of an entire police department may be imputed to officers on the scene to help establish reasonable suspicion or probable cause." (citation omitted)).

¶29     Given this evidence, we conclude that the circuit court properly refused to suppress Nero's blood test results.[10] "Probable cause is a flexible, commonsense standard" that "requires only that the facts available to the officer would warrant a person of reasonable caution to believe that an offense likely was committed." *State v. Nieves*, 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125. "Law enforcement officers are permitted to formulate certain commonsense conclusions about human behavior and to consider the evidence as understood by those versed in the field of law enforcement." *Id.* Under this standard, the above evidence provided Kurtzhals with sufficient probable cause to request that Nero consent to a blood test.

¶30     Nero challenges the above conclusion by arguing that "Spenle arrested Nero for non-drug-related offenses: driving with a revoked license and

---

[10] We note that beyond citing *Schmerber v. California*, 384 U.S. 757 (1966), for the proposition that law enforcement needs probable cause to justify a warrantless blood test, neither party develops an argument related to the legal authority for the blood draw in this case. For example, although Kurtzhals read Nero the Informing the Accused form, *see supra* ¶8, neither of the parties cite or address WIS. STAT. § 343.305, Wisconsin's implied consent statute, in their briefing before this court.

"The Fourth Amendment ordinarily requires a search warrant for a blood draw unless one of the exceptions to the warrant requirement exists." *State v. Blackman*, 2017 WI 77, ¶4, 377 Wis. 2d 339, 898 N.W.2d 774. One of these exceptions is consent. *Id.* "Wisconsin has passed an implied consent law, which is designed to facilitate the gathering of evidence to remove [impaired] drivers from the road." *State v. Prado*, 2021 WI 64, ¶20, 397 Wis. 2d 719, 960 N.W.2d 869. Under WIS. STAT. § 343.305(2), as applicable here, any person who drives or operates a motor vehicle on Wisconsin's public highways "is deemed to have given consent to one or more tests of his or her" blood "for the purpose of determining the presence or quantity in his or her blood" of controlled substances "when requested to do so by a law enforcement officer under" the provisions of subsection (3).

Based on the parties' arguments in this case, we will assume, without deciding, that Kurtzhals required probable cause to request Nero's consent to a blood draw, and to the extent that any other constitutional or statutory standard may apply, we conclude that Nero has forfeited any such challenge.

criminal damage to property. And he included no indication of substance use in his report." We are not persuaded by Nero's arguments. First, simply because Spenle arrested Nero for non-OWI-related offenses does not imply that he could not have also arrested him for an OWI-related offense. Further, Nero repeatedly argues in his briefs that Spenle's report contains no indication of substance use; however, he fails to provide a record citation in support of this assertion. *See Grothe v. Valley Coatings, Inc.*, 2000 WI App 240, ¶6, 239 Wis. 2d 406, 620 N.W.2d 463 ("We decline to embark on our own search of the record, unguided by references and citations to specific testimony, to look for evidence to support [a party's] argument."), *abrogated on other grounds by Wiley v. M.M.N. Laufer Fam. Ltd. P'ship*, 2011 WI App 158, 338 Wis. 2d 178, 807 N.W.2d 236. Instead, Spenle's testimony at the motion hearing and at trial reflects Spenle's belief that Nero was exhibiting "visual signs of being under the influence."

¶31     Finally, Nero attempts to draw comparisons between this case and the holdings in *Quigley* and *State v. Ofte*, No. 2021AP1302-CR, unpublished slip op. (WI App Apr. 21, 2022).[11] In *Quigley*, the defendant argued that he made statements without the benefit of *Miranda* warnings and that "his right against self-incrimination was violated when, after he was compelled to make a statement to his probation agent, the police reinterviewed" the victim. *Quigley*, 370 Wis. 2d 702, ¶1. This case and *Quigley* are materially distinguishable because we concluded above that Kurtzhals had sufficient evidence to support a probable cause finding absent any statements Nero made to him without *Miranda* warnings or to the local probation agent or evidence derived from those statements.

---

[11] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

¶32 *Ofte* is also distinguishable for the same reason. In that case, this court affirmed the circuit court's suppression of all physical evidence derived from a violation of the defendant's *Miranda* rights. *Ofte*, No. 2021AP1302-CR, ¶¶2, 19. The evidence Kurtzhals had as a result of Spenle's and Vernon's investigations was not obtained as a result of Nero's non-*Mirandized* statement or his probation interview. Thus, *Ofte* is not applicable here.

¶33 In summary, we conclude that the circuit court did not commit a manifest error of law when it denied Nero's motion to suppress his blood test results. Therefore, it properly refused to reconsider its prior ruling.

### III. Ineffective assistance of counsel

¶34 Nero also renews his claim that his trial counsel was constitutionally ineffective in two respects. To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, the defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. Prejudice is demonstrated by showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citing *Strickland*, 466 U.S. at 693). We need not address both prongs

14

of the ***Strickland*** test if a defendant fails to make a sufficient showing on one prong. ***Strickland***, 466 U.S. at 697.

¶35    Whether an attorney rendered ineffective assistance is a mixed question of fact and law. ***State v. Nielsen***, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. We will uphold the circuit court's findings of fact unless they are clearly erroneous; however, whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently. ***Id.***

¶36    Nero also challenges the circuit court's failure to grant him an evidentiary hearing on his second postconviction motion. "Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant" to an evidentiary hearing is a mixed question of fact and law. ***State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. If the defendant's motion alleges facts that would entitle the defendant to relief, "the circuit court has no discretion and must hold an evidentiary hearing." ***State v. Bentley***, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). "Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo." ***Id.*** "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court has discretion to deny the motion without a hearing. ***Allen***, 274 Wis. 2d 568, ¶9. Whether a postconviction motion raised sufficient facts so as to require an evidentiary hearing is a question of law that we review independently. ***Id.***

¶37    On appeal, Nero makes a bare assertion that his trial counsel failed to present any evidence corroborating Nero's version of events at trial. Nero

points to two items of evidence in support of his position: (1) "testimony from Nero's friends corroborating his testimony"; and (2) "evidence that Nero's car still had gas in it." According to Nero, "[b]ecause both the State's version and Mr. Nero's version of events required the jury to make reasonable circumstantial inferences, any additional testimony corroborating Nero's account could have tipped the scales." Further, he notes that his trial counsel "never emphasized that Mr. Nero's car still had fuel in it when authorities found it," which, he contends, made counsel ineffective because "[t]his fact supports Nero's assertion that he left his vehicle on his own accord to call his friends—not out of cold-driven necessity as the State claimed."

¶38 We conclude that Nero's ineffective assistance of counsel arguments are both conclusory and undeveloped. *See Associates Fin. Servs. Co. of Wis. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (stating that generally this court does not consider conclusory and undeveloped assertions). On the first issue—failure to present corroborating testimony—Nero neglects to inform this court what "friends" he would have called to testify or even what his friends would have said, beyond a general assertion that his friends would have "corroborat[ed] his version of events." A defendant's postconviction motion must specifically allege within its four corners "the five 'w's' and one 'h'; that is, who, what, where, when, why, and how" the movant would successfully prove at an evidentiary hearing that he or she is entitled to a new trial. *Allen*, 274 Wis. 2d 568, ¶¶9, 23. Even absent an affidavit from the witnesses, Nero is required to provide the court with more than general claims of witness corroboration. Without these details, we are unable to assess whether Nero's trial counsel performed deficiently by failing to call Nero's friends to testify or whether that performance was prejudicial.

¶39 On Nero's second claim—that trial counsel failed to introduce evidence that Nero's vehicle had fuel in the gas tank when law enforcement found it—we conclude that this issue is also conclusory and undeveloped. Beyond stating that "[t]he fact that Nero's car still had fuel" relates to deficient performance and also "shows possible prejudice," Nero does not allege why or how that is true. In other words, Nero does not explain how trial counsel's failure to address whether Nero got cold or whether he left his car to hang out with his friends fell "outside the wide range of professionally competent assistance" and how "the result of the proceeding would have been different" if the jury had known that Nero's vehicle had gas in the tank when law enforcement found it. *See Strickland*, 466 U.S. at 690, 694. A claim of ineffective assistance follows a strict methodology and requires more than perfunctory statements of the defendant's opinions.

¶40 Finally, Nero asserts in passing that the cumulative effect of these failures prejudiced him. *See State v. Thiel*, 2003 WI 111, ¶¶4, 59, 264 Wis. 2d 571, 665 N.W.2d 305. However, we have concluded that Nero failed to properly develop these alleged errors, so we are also left guessing as to the cumulative effect. *See Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("Zero plus zero equals zero."); *see also Thiel*, 264 Wis. 2d 571, ¶61 ("[I]n most cases, errors, even unreasonable errors, will not have a cumulative impact sufficient to undermine confidence in the outcome of the trial.").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

17